## John D. Casey, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 15,374.

1. EVIDENCE—*what not proper cross-examination.* A question not relating to any matter inquired of upon direct is improper upon cross-examination.

2. EVIDENCE—*when as to custom incompetent.* Evidence of any other than a general custom is incompetent in an action for death caused by wrongful act.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed February 3, 1911. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** Appellant, Chicago City Railway Company, prosecutes this appeal to reverse a judgment recovered against it in the Superior Court of Cook county in favor of appellee for alleged negligence, causing the death of Horace Tessier.

The material facts appearing from the record are that on July 15, 1907, appellee's intestate was in the employ of the Chicago Telephone Company as helper to one of its branch exchange telephone switch-board installers. That company was then engaged, and had been for three or four days previously, in transferring all the lines of the appellant's switchboard at 2020 State street to the First National Bank Building. Appellee's intestate was engaged in this work when he was injured.

In the power house where some of the work was being done, appellant maintained and operated a heavy iron crane on tracks about thirty feet from the floor. This crane was fifty feet in length, extending entirely across the building, and was operated on tracks along each wall. The rails were seven inches from the wall on either side of the building.

The crane was mounted on two wheels at each end,

and was propelled along the tracks east and west by electric motors located on the crane. It was operated from a cab on the crane in which the operator rode. The crane was used for moving heavy machines and other heavy articles.

The telephone lines undergoing change were brought into this power house of appellant in an iron pipe or conduit fastened to the north wall of the building between the rail upon which the north end of the crane ran and the wall. There was an opening in the pipe or conduit for use in splicing, making connections and stringing wires. This opening was nearly above the desk of appellant's foreman in charge of the house.

The telephone employes, including deceased, had been at work about the power house since July 12, 1907; and it is claimed by the plaintiff that on Saturday and Monday forenoon, they had been at work on the crane tracks and were known and observed to be there at the opening in the conduit at their work by Broderick, appellant's switchboard operator or foreman. Defendant claims, on the other hand, that there is no evidence showing that Broderick, or any of the defendant's employes, knew that deceased was on the track. When working they sat astride the rail on the north wall. On Saturday before the accident Broderick directed deceased and his fellow workman Boland to reach the conduit by climbing over the crane and crawling along the track to the opening in the pipe.

On Monday morning, the day of the accident, Frank J. Motis, then in charge of the men working for the Chicago Telephone Company, appeared at the power house of appellant and had a conversation with Broderick, appellant's foreman or operator in charge, regarding the work then being done upon the crane track. As to the terms of the conversation Motis and Broderick do not agree, but they do agree that Broderick was notified that work was to be done upon the crane track by the telephone men; and Motis was

given permission to send his men there to work. Motis then ordered his men to work on the crane track, and they worked there during the forenoon. When they returned in the afternoon they found the crane in use by some structural iron workers. Gross, the superintendent of the telephone work, testified that he had a talk with Broderick about the telephone work on the crane track and was given permission to send men there to work and to use the crane as soon as the iron workers were through with it. This is denied by Broderick. About three o'clock in the afternoon the plaintiff's intestate was ordered to go upon the crane track to work. He obeyed and was there at work until a little after four o'clock, when the accident happened. Dnuring this hour or more Gross, in the presence and hearing of Broderick, shouted orders to him from a point about six feet from Broderick's desk. Plaintiff's intestate was astride the track at the opening of the conduit, and while in that position the crane was run upon him without warning.

EDWARD C. HIGGINS and WATSON J. FERRY, for appellant.

ELMER & COHEN, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Four grounds are urged for the reversal of the judgment. First, that the verdict as to appellant is not justified by the evidence; second, the verdict is against the manifest weight of the evidence; third, errors in the admission of improper, and the exclusion of proper evidence; and, fourth, the verdict is excessive.

In support of the first ground it is urged that the record is barren of any proof of the cause of the death of Tessier or any evidence that it was caused by any of the acts of negligence alleged against ap-

pellant. We cannot concur in this proposition. We think that there is direct and positive evidence in the record showing that the deceased was struck by the heavy crane while in such position that fatal injuries would naturally follow; and that the injuries caused by the crane produced his death as a direct result, was a legitimate conclusion from the evidence.

Upon a careful review of the evidence we cannot say that the verdict is against the manifest weight of the evidence. The testimony is conflicting upon the question whether Broderick had knowledge or notice of the fact that Tessier was at work on the crane track, or might be there, before and at the time the crane was moved. It was a question for the jury, and we perceive no good reason for disturbing their verdict.

H. M. Webber, a claim agent for the Chicago Telephone Company, was called by the plaintiff, and testified as abstracted that he had been served with a subpoena to bring in the contracts or records showing installation, if any, of work at the power house in question for the Chicago City Railway Company. He was thereupon asked on cross-examination by counsel for appellant the following question:

"Q. Have you as representative, claim agent of the Chicago Telephone Company, made any arrangement or settlement with Elmer & Cohen, the attorneys for the plaintiff?"

The court sustained an objection to the question. The ruling was not erroneous. It was not proper cross-examination, the subject not having been referred to in the direct examination of the witness.

In the direct examination of appellant's switch-board operator, Broderick, he was asked:

"Q. What was the custom and practice in regard, if any, in regard to giving you notice whenever anybody had to go upon the crane?" The court sustained an objection to the question, and we think properly. The question does not call for a general custom. Tes-

sier was not injured on the crane. No offer was made nor was there any attempt to show that Tessier or his fellow workman had been informed of any custom which was a rule of conduct for men engaged temporarily in such work as the telephone employes were doing. The question whether there was any requirement by appellant or by the switch operator, as to when persons should or should not, or could or could not, go upon the crane or crane tracks, was not proper in the absence of any communication thereof to the plaintiff's intestate or his foreman. The cases holding general customs of doing business in railroad yards by railroad men, of which other railroad men were presumed to have knowledge, are admissible, are not applicable in this case. The parties here involved were acting under special and temporary circumstances, with reference to which there could not be a known general custom, in the nature of things.

We think the verdict was for a liberal amount, but we cannot say that it was so excessive in amount as to indicate that the jury were improperly influenced in awarding the damages, or that we should interfere with the verdict and judgment on that ground.

The judgment is affirmed.

*Affirmed.*